In the Matter of James Glen WHITE et al., on Habeas Corpus.

James L. WHITE, Appellant
(Petitioner below),

v.

Donald W. BAUGHMAN and Mary Lou Baughman, formerly Mary Lou White, Appellees (Respondents below).

No. 3974.

Supreme Court of Wyoming.

Nov. 11, 1971.

Daniel P. Svilar, Lander, for appellant.

Charles E. Hamilton, Riverton, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

McINTYRE, Chief Justice, delivered the opinion of the court.

James L. White of Blackwell, Oklahoma, filed a petition for habeas corpus in the district court of Fremont County to re-

cover possession and custody of his three minor sons. His former wife, mother of the children, and her present husband, Donald W. Baughman, were named as respondents in the petition.

The natural father and mother of the boys were divorced in 1961 in Oklahoma. A divided custody was provided for in the decree of divorce. Afterwards the decree was modified from time to time with changes in the custody provisions.

In 1964 the parents entered into an agreement which gave custody of the youngest son to the mother and custody of the two older boys to the father. The Oklahoma court modified its decree in accordance with the agreement. In doing so, it continued a provision prohibiting the parties from removing the children from Oklahoma.

Subsequently the father applied for another change of custody and cited the mother for contempt for taking the youngest child, Joey, out of Oklahoma. The mother countered with a citation against the father for failure to pay support money. A full hearing was had in the Oklahoma court August 7, 1967, with both parties present and represented by counsel.

Following the 1967 hearing the court decreed that its 1964 order would remain in full force and effect. Thus, the custody of the two older children, James and Stephen, was left with the father, James L. White; and the custody of Joey was left with the mother, Mary Lou Baughman. Parties were still prohibited from removing the children from Oklahoma.

Respondents freely admit they surreptitiously obtained possession of James and Stephen several months after the August 7, 1967 order; and that they took the three children to Kansas for some time and then on to Shoshoni, Wyoming, where Mr. Baughman obtained a teaching job. Mr. White was not notified where his children were and it was August 17, 1969 when he found them living with their mother and stepfather in Wyoming. His demand for custody was refused and his petition for a writ of habeas corpus was filed.

The trial court denied petitioner's request for a writ of habeas corpus and entered an order awarding the permanent custody of all three children to the respondents. The order recited that respondents shall be entitled to judgment against the petitioner in the amount of $625 for back child support for Joey; and the petitioner was ordered to pay future support money to the respondents in the amount of $50 per month for each of the three children.

The petitioner, Mr. White, has appealed.

### Comity

■ The gist of appellant's argument is that respondents have failed to show the conditions and circumstances of the parties had so changed, since the *August 7, 1967* hearing and order of the Oklahoma court, that the welfare of the children would be promoted by a change of custody. We think the record supports this contention.

We emphasize the date of the order relied on by appellant because another order was entered by the Oklahoma court November 18, 1968. It purported to award the custody of the three children to the father. It shows on its face, however, that Mrs. Baughman was not before the court. It is quite apparent she had not been served with process and she and the children were not in the jurisdiction of the Oklahoma court at that time.

There is no contention or claim that the order of November 18, 1968 controls and we will assume it has no binding force or effect. It is not disputed, however, that the court had jurisdiction of the parties and children when its August 7, 1967 order was made and our courts must give full faith and credit to that order.

The correct rule, and the one which still prevails in our jurisdiction, was made clear by this court in 1918 in Linch v. Harden, 26 Wyo. 47, 176 P. 156, 157. In that case the court recognized that, pursuant to Art. 4, § 1, of the United States Constitution,

full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, where the child at the time the judgment is rendered is domiciled in another state. The court then went ahead to hold that courts of the state of a subsequent domicile of the child are not bound by the judgment of the foreign state "when it is made to appear that the conditions and circumstances of the parties have so changed since the adjudication that the welfare of the child would be promoted by a change of custody."

Implicit in our decision, in Henson v. Henson, Wyo., 384 P.2d 721, is recognition of the rule that full faith and credit must be given to a valid judgment of a foreign state and that it can be departed from only when conditions and circumstances of the parties have so changed that a modification is necessary to protect the welfare of the child. The justices, in *Henson,* were not in disagreement as to the rule. They differed only as to whether a sufficient change of circumstances had been proved. Justice Parker, in a dissenting opinion, correctly stated the applicable rule when he said:

> "Judge Harnsberger correctly stated the rule applicable in the present case when in Laughton v. Laughton, 71 Wyo. 506, 259 P.2d 1093, 1095, 43 A.L.R.2d 351, he said, 'Where it is contended that due to changed conditions a previous decree should be modified in the interest of the child so as to better provide for its welfare, the burden is upon the party alleging it, to prove that such change has in fact occurred, and that it warrants a modification.'"

The district court of Fremont County recited in its order:

> "1. That there has been a substantial change of conditions concerning economic, educational, extracurricular, and the home living conditions of the Respondents; and
>
> "2. That it is in the best interests and welfare of the children that they remain within and in the custody of the Respondents;"

We have searched the record diligently and we fail to find any evidence of any substantial or material change in the conditions and circumstances of the parties subsequent to the order in Oklahoma on August 7, 1967 and prior to the hearing in Wyoming.

Counsel for appellees seems to argue the welfare of the children is the only consideration and a Wyoming court can examine into that without regard to a previous order of another court, foreign or domestic. Indeed, counsel persists in pointing to evidence of events which transpired prior to August 7, 1967, in his effort to show the two older boys should not be with their father.

The argument of counsel overlooks the fact that, in the absence of proof of a material change of circumstances, the findings of the Oklahoma court with respect to the best welfare of the children remains conclusive and not subject to change by a court in Wyoming.

### Child Support

Appellant cites 39 Am.Jur.2d, Habeas Corpus, § 149, p. 282, where it is indicated most courts have taken the view that, in the absence of statutory authority, questions pertaining to child support cannot be adjudicated in a habeas corpus proceeding having to do with child custody. He also calls attention to the annotation in 17 A.L.R.3d 764, 767, where decisions are reviewed which have adopted the view that a court in habeas corpus does not have power to adjudicate support questions. Among the cases credited with such a view is In re Adoption of Strauser, 65 Wyo. 98, 196 P.2d 862, 869.

It is true this court did say in *Strauser* that it had found no authority indicating money claims for the care of children had ever been litigated in adoption proceedings; and that in habeas corpus and guardianship cases involving children "it

has been held" that such claims are out of place.

We need not decide what the present-day weight of authority is with respect to the adjudication of child support in habeas corpus actions. Respondents in the instant case are in no position to ask for relief from the Wyoming courts with respect to support money for James and Stephen. We cannot overlook the fact that respondents took the law in their own hands when they deliberately and intentionally violated orders of the Oklahoma court.

As far as respondents themselves are concerned, we are justified in applying the maxim that he who seeks equity must do equity.[1] This does not mean we can neglect the welfare of the children because of the unlawful acts of parents, and we shall not do so.

When the Baughmans surreptitiously took the older boys from the custody and care of the father, without his permission, they assumed unto themselves responsibility for the future care of these boys.

In Wardle v. Wardle, Wyo., 464 P.2d 854, 855, we said the evidence in that case showed the children *had been* well provided for and supported up to the time of the last hearing, but at the time of the last hearing the situation was changed and the children were in need of future support. Although the mother, in that case, was not allowed to collect past support payments, she was awarded future support for the children.

In the case we are now dealing with, no award was made to compensate respondents for expenditures already made in supporting James and Stephen. Also, there is no evidence indicating the boys will in the future be in need. If the Baughmans furnish future support, it will only be what they bargained for and the responsibility they assumed when they took James and Stephen away from their lawful custodian and out of Oklahoma.

The Oklahoma court provided for the care and custody of all of the children, according to that court's finding as to the best interest and welfare of the children. Inasmuch as respondents do not have clean hands, they should be left where they are. See the *Wardle* opinion, at 464 P.2d 856.

Concerning Joey, his custody was awarded to Mrs. Baughman by the August 7, 1967 decree in Oklahoma. Petitioner's application for habeas corpus must fail as far as this child is concerned. And this is doubtless well because he has lived with his mother since the divorce in 1961.

The record before us indicates James was 13 years of age and Stephen was 12 years of age at the time of the habeas corpus hearing on September 4, 1969. We cannot, therefore, be unmindful that these boys are now 15 and 14 years old. Also, we are not unmindful of § 3–3, W.S.1957, which allows a minor 14 years of age to nominate his own guardian, who, if approved by the court or judge, must be appointed.[2]

None of the children were 14 at the time of the September 4, 1969 hearing, and the trial court had no occasion to decide whether arriving at the age of 14 amounts to a change of circumstances sufficient to warrant inquiry into the effect of § 3–3. We therefore do not pretend to pass upon the effect of changes which have transpired since the judgment of the district court.

That portion of the order awarding permanent custody of James Glen White and Stephen Louis White to the respondents is reversed.

That portion of the order awarding permanent custody of Joey Dow White to the respondents is affirmed.

Reversed in part; affirmed in part.

1. See Wardle v. Wardle, Wyo., 464 P.2d 854, 856; and Craig v. Craig, 157 Fla. 710, 26 So.2d 881, 883.

2. See Tytler v. Tytler, 15 Wyo. 319, 89 P. 1, where the right of nomination was recognized in connection with an appeal in habeas corpus.